UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILEMS JUSTILIEN, *et al.*,

                       Petitioners,

     v.

JULIO HERNANDEZ, *et al.*,

                       Respondents.

Case No. C26-2077-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioners are currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  They jointly filed this 28 U.S.C. § 2241 habeas action through counsel to obtain release from immigration detention, arguing their redetentions after having been released into the United States violate their due process rights under the Fifth Amendment.  *See generally* Dkt. 1.  Petitioners also seek permanent injunctive relief related to any future redetention.  *Id.* ¶¶ 93-99.  Each Petitioner filed a sworn declaration in support of the petition.  Dkts. 2-5.  Government[1] Respondents filed a return, Dkt. 10, along with a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Ian Bloom (Dkt. 11) ("Bloom Decl."), and an

---

[1] Respondent Bruce Scott has not appeared or filed a responsive pleading.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

unsworn declaration from their counsel Peter Clark (Dkt. 12) ("Clark Decl."). Petitioners filed a traverse in reply. Dkt. 13.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court GRANTS in part the petition, Dkt. 1, and ORDERS that Petitioners be released from detention within twenty-four (24) hours.

## I.    BACKGROUND

Facts specific to each Petitioner are outlined below. Facts common to all Petitioners are that they are noncitizens who were previously released into the United States after being briefly detained near the border. After living in the United States for a significant period of time, Petitioners were subsequently redetained after attending pre-scheduled ICE appointments, without first being provided notice for the reason of their redetentions, or an opportunity to challenge the bases for their redetentions in front of a neutral decisionmaker. *See generally* Dkts. 1-5.

### Wilems Justilien

Petitioner Wilems Justilien (Justilien) is a native and citizen of Haiti who first entered the United States in October 2024. Bloom Decl., ¶¶ 3-4. He asserts he fled Haiti after receiving death threats from gang members. Justilien Decl., ¶ 1. After entering the United States, he was detained by ICE and initially processed for expedited removal. Bloom Decl., ¶ 5. Justilien later claimed a fear of returning to Haiti and was referred to USCIS for a credible fear interview. *Id.*

Justilien was released from detention on January 21, 2025, on an Order of Release on Recognizance ("OREC"). Clark Decl., ¶ 2, Ex. A. The OREC specifically notes that Justilien's release is "[i]n accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations[.]" *Id.* at 2. Justilien was required to enroll in the Intensive

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

Supervision Appearance Program ("ISAP"), which required "daily photo check-ins, weekly video calls, and monthly appointments both at home and in-person[.]" Justilien Decl., ¶¶ 3, 5.

Petitioner initially lived with his cousin in Florida before moving to Washington State. *Id.* ¶¶ 3-4. Justilien filed an application for asylum in January 2026 and his first asylum hearing was scheduled for June 11, 2026. *Id.* ¶ 6; Bloom Decl., ¶ 10.

On May 4, 2026, ICE arrested and redetained Justilien after he checked in for a scheduled in-office appointment. Justilien Decl., ¶ 7. He was informed of eleven ISAP violations but was not given additional information or an opportunity to explain the circumstances. *Id.* He was transferred to the NWIPC in Tacoma, where he remains detained. *Id.* ¶ 9.

While in custody, Justilien attended an immigration merits hearing on June 29, 2026, at which the immigration judge denied relief from removal and ordered him removed to Haiti. Bloom Decl., ¶ 15; *see* Clark Decl., ¶ 2, Ex. B.

Justilien asserts he has no criminal history. Justilien Decl., ¶ 8.

**Rangel Rojas**

Petitioner Eduard Rangel Rojas (Rangel Rojas) is a citizen of Venezuela who entered the United States on or around May 28, 2024. Bloom Decl., ¶¶ 17-18. Rangel Rojas asserts he fled Venezuela after his father was targeted by law enforcement for having "quit his job with the Venezuelan government."[2] Rangel Rojas Decl., ¶ 1. Rangel Rojas was released from immigration custody the following day on an OREC.[3] Bloom Decl., ¶ 19; Clark Decl., ¶ 4, Ex. C at 5.

---

[2] The petition asserts Rangel Rojas "came to the United States fleeing political persecution." Dkt. 1 at 9.

[3] Rangel Rojas' OREC is not in the record.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

Rangel Rojas was required to wear an ankle monitor and instructed to report to the ICE field office when he reached his final destination (Tacoma, Washington).  Rangel Rojas Decl., ¶ 2.  He reported to the local ICE field office, where he was informed that his ankle monitor would be removed after four months.  *Id.* ¶ 3.

While released, Rangel Rojas filed an application for asylum.  *Id.* ¶ 8.  His next hearing was scheduled for 2027 in Seattle.  Dkt. 1 at 11.

Rangel Rojas was hospitalized after he suffered a broken spine during a workplace accident, which rendered him "physically unable to make sure [his] ankle monitor was charged and working."  Rangel Rojas Decl., ¶ 4.  He notified ICE of his mobility difficulties and ICE removed the ankle monitor around October 2024.  *Id.*  During the same appointment, Rangel Rojas installed an application on his phone, which he used to complete ICE check-ins.  *Id.* ¶ 5.  He was required to submit weekly photos, answer monthly video calls from home, and periodically report in person to the ICE office.  *Id.*

Rangel Rojas asserts he complied with his reporting requirements to the best of his abilities.  *Id.* ¶¶ 5-6, 9.  He is only aware of one instance where his photo check-in was deficient, which he remedied by submitting another picture.  *Id.* ¶ 10.  He is aware of missing one in-person appointment, but presented himself to the ICE office as soon as he realized.  *Id.* ¶ 12.

On April 29, 2026, ICE arrested Rangel Rojas after he checked in to a pre-scheduled appointment.  Bloom Decl., ¶ 24.  Rangel Rojas asserts he was informed that he was being detained for having entered the United States illegally.  Rangel Rojas Decl., ¶ 15.  Officer Bloom asserts that "ERO's record checks reflected . . . ATD violations, which were determined to be violations of Petitioner's . . . OREC."  Bloom Decl., ¶ 24.  He was arrested and transferred to the NWIPC, where he remains detained.  *Id.* ¶¶ 24-25, 30.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

On June 22, 2026, Rangel Rojas attended an immigration merits hearing, at which his applications for relief were withdrawn and the immigration judge granted his application for "pre-conclusion voluntary departure under INA § 240B(a)." *Id.* ¶ 29; *see* Clark Decl., ¶ 5, Ex. D. He was ordered to self-remove to Venezuela by July 22, 2026. *Id.*

Rangel Rojas has no criminal history. Rangel Rojas Decl., ¶ 14; Clark Decl., ¶ 3, Ex. C at 5.

**<u>Wilson Ferrera Orellana</u>**

Petitioner Wilson Ferrera Orellana (Ferrera Orellana) is a native and citizen of Honduras who first entered the United States on May 5, 2024, with his wife, mother-in-law, and three children. Ferrera Orellana Decl., ¶ 2; Bloom Decl., ¶¶ 31-32. He contends he fled Honduras "to avoid death threats by MS-13" and he and his family turned themselves in to ICE to seek asylum. Ferrera Orellana Decl., ¶¶ 1-2. He and his family were briefly detained and later released on ORECs issued in accordance with INA § 236. *Id.* ¶ 3; Bloom Decl., ¶ 34; Clark Decl., ¶ 6, Ex. E. Ferrera Orellana and his family thereafter moved to Lynnwood, Washington. Ferrera Orellana Decl., ¶ 3.

Ferrera Orellana reported to his first ICE appointment in May 2024, and he was scheduled for an ISAP appointment the following June. *Id.* ¶ 4. At his ISAP appointment, he was put on a wrist monitor and told his location would be monitored. *Id.* He was also required to submit photos through the wrist monitor, answer weekly phone check-ins, complete home check-ins, and attend monthly in-person appointments at the ISAP office. *Id.*

While released, Ferrera Orellana filed his application for asylum. *Id.* ¶ 7. He attended his first several hearings, hired an immigration lawyer, and received work authorization. *Id.* In December 2025, he started his own construction company and registered his business with the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

State. *Id.* ¶ 10. He planned to attend his immigration hearing that was scheduled for November 3, 2028. *Id.* ¶ 7.

On May 8, 2026, ICE arrested Ferrera Orellana after he checked in for his pre-scheduled monthly ISAP appointment. *Id.* ¶ 13. Ferrera Orellana asserts that he was walked back to a different hallway and handcuffed by six ICE officers. *Id.* He believes ICE mistook him for a different person, as he overheard one officer tell another, "That is not him." *Id.* He was thereafter transferred to the NWIPC, where he remains detained. *Id.* ¶¶ 13-14; Bloom Decl., ¶ 39.

**Shamsul Alam**

Petitioner Shamsul Alam (Alam) is a citizen of Bangladesh who first entered the United States on or around June 5, 2024, seeking asylum. Alam Decl., ¶ 1; Bloom Decl., ¶¶ 43-44. He asserts he was forced to flee Bangladesh because he was "targeted for his political opposition activities." Alam Decl., ¶ 1. Alam was initially processed for expedited removal, but later expressed a fear of returning to Bangladesh and subsequently received a positive credible fear finding.[4] Bloom Decl., ¶ 45.

He was thereafter issued a Notice to Appear ("NTA") before an immigration court in non-expedited proceedings and released from detention on one-year "discretionary interim parole" under INA § 212(d)(5). Bloom Decl., ¶ 46. According to Officer Bloom, Alam's parole imposed "reporting requirement and other conditions on his release." *Id.* ¶ 47. Alam, in contrast, asserts that he was instructed to attend an ICE appointment in New York on October 30, 2024, but "did not have any other reporting requirements except for the check-ins once a year." Alam Decl., ¶ 3.

---

[4] *See* INA § 235.3(b)(4).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

Once in Brooklyn, Alam lived with his uncle and reported to the local ICE office as instructed. *Id*. At the appointment, he was scheduled for his first court hearing in New York on April 26, 2026. *Id.* He was given another ICE check-in date of October 30, 2025. *Id.*

Alam contends he attended his October 30, 2025, ICE appointment and was asked to provide his passport. *Id.* ¶ 7. Because he did not have his passport, his appointment was rescheduled for November 25, 2025. *Id.* Alam contends ICE did not explain why he was required to bring his passport to his appointment. *Id.*

On November 25, 2025, ICE arrested Alam after he reported to the ERO office in New York for his appointment. *Id.* ¶ 8; Bloom Decl., ¶ 48. Officer Bloom asserts that bed space became available and ERO "decided [Alam] was to be redetained." Bloom Decl., ¶ 48. He was taken into custody and transferred to the NWIPC on December 4, 2025. *Id.* ¶ 49.

On February 9, 2026, Alam filed a habeas petition in this Court, seeking release from custody or a bond hearing, which was subsequently denied on April 3, 2026. *See Alam v. Hernandez*, C26-00468-TMC, 2026 WL 915076 (W.D. Wash. April 3, 2026). Petitioner acknowledges that his prior petition was denied but asserts it "did not raise a constitutional challenge to his redetention." Dkt. 1 at 16 n.1. Alam asserts that his family in New York assisted in filing his previous habeas petition and that because he did not write the petition, he did not "know what arguments it contained." Alam Decl., ¶ 10. Alam spoke with another attorney during his current detention at the NWIPC and learned that he may have another viable habeas claim "based on the way [he] was redetained at [his] ICE check-in." *Id.*

On April 15, 2026, Alam attended an immigration merits hearing, at which the immigration judge ordered Alam removed to Bangladesh. Bloom Decl., ¶ 56. Alam filed an appeal with the Board of Immigration Appeals, and his appeal remains pending. *Id.* Alam has

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

not had a bond hearing during his detention and, according to Officer Bloom, is "not scheduled to appear for one." *Id.* ¶ 57. Officer Bloom contends Alam is detained under INA § 235. *Id.* ¶ 58.

**Petition for Relief**

On June 12, 2026, Petitioners jointly filed the instant petition for writ of habeas corpus, seeking the following relief:

1) A standard order[5] as provided for by General Order No. 10-25 of this Court;

2) A writ ordering Petitioners' immediate release and permanently enjoining their redetention during the pendency of their removal proceedings, absent written notice and a hearing prior to redetention where Respondents must prove by clear and convincing evidence that each Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks;

3) An order for the return of Petitioners' personal property, including personal identification documents and employment authorization documents (EADs), held by Respondents;

4) An order that Petitioners be restored to the same conditions of release as those in place prior to Petitioners' redetention, unless Respondents choose to impose less restrictive conditions;

5) An award of attorneys' fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

6) Any further relief the Court deems just and proper.

Dkt. 1 at 26-27 (citation modified).

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15,

---

[5] A scheduling Order directing Respondents to show cause why Petitioners' petition for writ of habeas corpus should not be granted was issued by this Court on June 15, 2026. Dkt. 6.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

2026).  "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require."  *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

### III.   DISCUSSION

Petitioners' sole claim challenges their respective redetentions as violative of their due process rights under the Fifth Amendment.  Dkt. 1 at 25-26.  According to Petitioners, "[d]ue process [did] not permit the government to redetain [them] and strip them of their liberty without written notice and a pre-deprivation hearing before a neutral decisionmaker[.]"  *Id.* at 25.  In response, Respondents argue that Petitioners are mandatorily detained under 8 U.S.C. § 1225(b).  Dkt. 10 at 1, 2-5.  As for their redetentions, Respondents concede that Petitioners did not receive pre-deprivation hearings prior to being redetained and acknowledge that if this Court were to apply the same reasoning in recent Western District cases, "this Court will likely find the redetentions of Petitioners Justilien, Rangel Rojas, and Ferrera Orellana required notice and pre-deprivation hearings to comport with procedural due process."  *Id.* at 8-9.  As for Petitioner Alam, Respondents argue the "abuse of writ doctrine" precludes habeas relief because he failed to raise a redetention claim in his prior habeas petition.  *Id.* at 9-10.

### A.   Statutory Detention Authority

Petitioners do not discuss the statutory authority governing their detentions in their petition or reply but instead appear to suggest that due process afforded them pre-deprivation process regardless.  *See generally* Dkt. 1; *see also* Dkt. 13 at 2 (arguing that due process requires pre-deprivation process regardless of whether the noncitizen is released on recognizance or parole under § 1182(d)(5)).  Although the Court is mindful that Petitioners' claim is constitutional, "[w]here [a noncitizen] falls within this statutory scheme can affect whether his

detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).  Further, Respondents seek to justify Petitioners' detentions, at least in part, as being mandatory under § 1225(b)(2).  Dkt. 10 at 1; *see also* Bloom Decl., ¶¶ 16, 30, 42, 58.  Accordingly, the Court briefly discusses Petitioners' individual circumstances and the relevant statutory detention authorities.

Section 1225 authorizes the Government to detain certain noncitizens seeking admission into the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018).  Section 1225(b) "applies primarily to [noncitizens] seeking entry into the Unites States ('applicants for admission' in the language of the statute)." *Id.* at 297.  Noncitizens are considered "applicants for admission" to the United States when they "arrive[]" in the United States or are "present" in this country but have "not been admitted."  8 U.S.C. § 1225(a)(1).  "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id*. (citing § 1225(b)(1)(A)(i)).  Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.*  Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id*.  Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention.

Section 1226(a), in contrast, has been described as the "default rule," which permits DHS to issue warrants for the arrest and detention of noncitizens "already in the country" pending the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

outcome of their removal proceedings. *Jennings*, 583 U.S. at 288. Except for noncitizens who have been involved in certain criminal offenses or terrorist activities, *see* 8 U.S.C. § 1226(c)(1), noncitizens detained under § 1226(a) may be released on bond or conditional release. *Id.* at 288-89.

Courts in this District routinely reject Respondents' argument that noncitizens detained under circumstances like Petitioners' are applicants for admission who are also "seeking admission" and thus, subject to § 1225(b). Dkt. 10 at 2-5. *See Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wash. 2025) (collecting cases). In *Rodriguez Vazquez*, the court held that noncitizens who lived in the United States for years and are arrested during routine compliance activities are not engaged in "seeking admission." *Id*. at 1329; *see also Jennings*, 583 U.S. at 288 (describing § 1226 as governing "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including noncitizens "who were inadmissible at the time of entry").

Here, Petitioners Justilien, Rangel Rojas, and Ferrera Orellana were all conditionally released to live in the United States and were redetained after attending pre-scheduled ICE check-in appointments. The Court adopts the reasoning outlined in *Rodriguez* and finds Justilien, Rangel Rojas, and Ferrera Orellana are subject to the discretionary detention scheme in § 1226(a).

The circumstances of Alam's entry, detention, and release appear different than the other three petitioners, but the limited evidentiary record makes it difficult to ascertain the applicable statutory authority governing his redetention. Unlike the others who were released pursuant to § 1226(a), Alam, in contrast, was purportedly released on "discretionary interim parole under [INA §] 212(d)(5)", codified at 8 U.S.C. § 1182(d)(5), which is the only statute authorizing the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

temporary release of noncitizens detained under § 1225(b).  Bloom Decl., ¶ 47; *see Jennings*, 583 U.S. at 300.  However, there is no other evidence in the record related to Alam's parole beyond Officer Bloom's assertion.[6]

The fact that Alam was potentially released under the only available statutory mechanism under § 1225(b) did not necessarily allow DHS to revoke Alam's parole without due process. *See Dieng v. Hermosillo*, C26-00190-LK, 2026 WL 411857, at *3-4 (W.D. Wash. Feb. 13, 2026) (reiterating that the "constitution does not countenance fictional erasure of [parolee's] actual presence in this country—or his concomitant due process rights.")  "That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to redetaining the parolee." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).  Nor does the statute authorizing Alam's 2024 parole necessarily continue to govern his detention *today*— particularly in light of the limited evidence of the terms of Alam's parole and the fact that Alam remained free for several months after his parole allegedly ended.  *See Del Valle Castillo v. Wamsley*, C25-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) ("Particularly relevant in each case is the government's treatment of the petitioner seeking habeas relief: where a petitioner has been treated by Respondents as subject to discretionary detention under [§ 1226], rather than mandatory detention under [§ 1225], the former is more likely to apply.").

---

[6] While it is Petitioner Alam's burden to prove he is in custody in violation of the law, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c), the Court observes that relevant documents are missing from Alam's USCIS file provided by Respondents.  Documents related to Alam's parole (and its subsequent expiration or termination), the conditions imposed, any notices to appear, warrants, or custody determinations could have been relevant and probative to the parties' positions regarding Alam's detention.  Many of these documents are provided for the remaining three petitioners, *see* Clark Decl., ¶¶ 2-7 (and the exhibits attached therein), but Respondents provide no explanation for omitting Alam's.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

Taking Officer Bloom's declaration as correct, Alam's parole expired on September 9, 2025, *see* Bloom Decl., ¶ 47, yet there is no evidence DHS sought to terminate or revoke his parole until months later—and only after he showed up to a pre-scheduled appointment, *see id.* ¶ 48. Prior to revoking parole, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States," and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A). To the extent any of this process occurred, such evidence is not before the Court. What the record does show is that Alam, while perhaps initially paroled under § 1182(d)(5), remained conditionally released for over two months past his parole's termination date. Bloom Decl., ¶¶ 47-48.

Accordingly, with the limited evidentiary record before it, the Court cannot determine which statute authorizes Alam's detention, but there exists at least a colorable argument that his detention is no longer mandatory under § 1225(b), but rather discretionary under § 1226(a). Ultimately, given the instant petition's focus on the *redetention* of Petitioners, the Court need not resolve the question of Alam's detention authority today. However, because Respondents seek to justify Petitioners' detentions as being mandatory under § 1225(b), the Court is compelled to expressly reject the argument. Not only is Respondents' position unsupported by the current record, but it also has "no [effect] on a claim contending that [a noncitizen's] detention violates . . . Due Process." *Francois v. Wamsley*, C25-2122-RSM-GJL, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025).

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13

**B.** *Mathews* **and Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the Government infringes on a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz*, 53 F.4th at 1206-07; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

The parties acknowledge that courts in this District apply *Mathews* in cases involving claims of unconstitutional redetention. *See* Dkt. 1, ¶¶ 87-92; Dkt. 10 at 8-9. Petitioners argue that applying *Mathews* compels their release here. Dkt. 1, ¶¶ 70-74. Respondents acknowledge that applying *Mathews* is likely to favor Petitioners Justilien, Rangel Rojas, and Ferrera Orellana and forgo applying the factors to their redetentions. *See* Dkt. 10 at 9. Respondents do not apply the *Mathews* framework to Petitioner Alam's redetention, *see id.*, but instead maintain that he should be precluded from any relief due to his prior denied petition, *id.* at 9-10.

This Court also deems the *Mathews* test applicable. In light of Respondents' concession that *Mathews* likely weighs in favor of Petitioners Justilien, Rangel Rojas, and Ferrera Orellana, the Court briefly addresses the relevant framework.

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14

*1.    Private Interest*

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]"  *Mathews*, 424 U.S. at 335.  The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (the interest in not being detained "is the most elemental of liberty interests").  The Supreme Court has also repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025).

Here, each Petitioner has a protected interest in their continued liberty.  Alam's interest, despite potentially being paroled under § 1182(d)(5), is no different.  *See, e.g., Yao v. Mullin*, No. C26-1599-BAT, 2026 WL 1596276, at *2 (W.D. Wash. June 4, 2026); *Kumar v. Noem*, C26-0294-SKV, 2026 WL 668335, at *4 (March 10, 2026); *Ramirez Tesara*, 800 F. Supp. 3d at 1136.  The first *Mathews* factor weighs in Petitioners' favor.

*2.   Risk of Erroneous Deprivation and Value in Additional Safeguards*

The risk of an erroneous deprivation is high where, as here, the Government relies on the incorrect statutory authority to justify a noncitizen's detention.  As stated above, the Court rejects Respondents' argument that § 1225(b) compels Petitioners' detentions.  Further, Respondents do not deny that Petitioners were not provided pre-deprivation process.  Dkt. 10 at 1.  Instead, Respondents argue that "due process does not mandate that all redetentions require a pre-deprivation hearing" and that "the specific circumstances of redetention drive what process is due[.]"  *Id.*

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 15

Despite arguing the focus should be on the "specific circumstances" of the noncitizen's redetention, Respondents fail to discuss Petitioners' circumstances here. Dkt. 10 at 2. Instead, Respondents appear to suggest that "a prompt post-deprivation hearing [could] be appropriate based on the individual facts of the case." *Id.* (quoting *Safi v. Noem*, C26-00308-TLF, 2026 WL 445564, at *4 (W.D. Wash. Feb. 17, 2026). Respondents do not discuss the facts of *Safi* or otherwise articulate why a post-deprivation hearing would be appropriate for Petitioners here. Respondents' position is also impossible to reconcile with their concession that Justilien, Rangel Rojas, and Ferrera Orellana were entitled to pre-deprivation process under the rationale of recent Western District decisions. *See* Dkt. 10 at 9 (and the Western District cases cited therein).

When the Government released Petitioners after their brief, initial detention, prior to doing so, officials necessarily determined that they would not pose a danger to the community or a risk of flight. *See* 8 C.F.R. §§ 236.1(C)(8), 212.5(b). Courts in this Circuit have found that redetaining noncitizens who were previously released under similar circumstances, without first reassessing those factors, "poses a significant risk of an erroneous deprivation [a noncitizen's] liberty interest in continued release." *See, e.g., E.A. T.-B.*, 795 F. Supp. 3d at 1323; *Doe*, 787 F. Supp. 3d at 1094.

As Respondents concede, Petitioners were not provided with pre-deprivation process and there is no evidence in the record showing Respondents considered whether any Petitioner here posed a risk of danger to the community or a risk of flight prior to redetaining them. The Court therefore finds there was a high risk of an erroneous deprivation of Petitioners' liberty interest in remaining free and that pre-deprivation notice and an opportunity to challenge the bases for their redetentions would have provided a valuable safeguard in ensuring such an erroneous deprivation did not occur. The second *Mathews* factor weighs in Petitioners' favor.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 16

### 3. Government's Interest

Respondents do not identify a governmental interest in redetaining Petitioners here and the Court is not going to independently identify one for them. Dkt. 10 at 9. Having failed to articulate an interest in Petitioners' detentions, and how it was advanced by, or necessitated, forgoing pre-deprivation process, the Court finds this final *Mathews* factor weighs in Petitioners' favor.

In sum, all *Mathews* factors weigh in Petitioners' favor. Respondents' redetention of Petitioners without providing "an opportunity to be heard at a meaningful time and in a meaningful manner[,]" *Mathews*, 424 U.S. at 333, violates the due process protections afforded by the Constitution. As Petitioners have established they are in custody in violation of the Constitution, they are entitled to habeas relief under § 2241 and must therefore be released from custody.

### C. Abuse of Writ

The Court now turns to Petitioner Alam's circumstances and decides whether the abuse of writ doctrine applies to bar his "successive" habeas petition. Respondents contend that the "abuse of writ doctrine 'generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" Dkt. 10 at 9 (citing *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011)). Respondents further argue that Alam had a "full and fair opportunity to raise the current due process challenge in his first habeas petition" because "he possessed all the facts necessary to challenge the constitutionality of the revocation of his parole." Dkt. 10 at 9-10.

Respondents provided the general rule from *Alaimalo*, but omitted the exception:

> The doctrine of abuse of the writ generally "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." Under the abuse of

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 17

the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim.

645 F.3d at 1049 (citations omitted).

Alam contends his individual circumstances demonstrate cause and prejudice. Dkt. 13 at 3. Respondents do not challenge the veracity of Alam's declaration and the Court independently sees no reason to question Alam's credibility regarding his prior petition. As he explains, English is not his native language. Alam Decl., ¶ 10. His prior petition was largely prepared without his knowledge and by family members in New York. *Id.*

Further, there is nothing in the record to suggest Alam made a strategic decision to omit the Due Process claim advanced here from his earlier, *pro se*, petition. He was previously unrepresented and unaware of the availability of his redetention claim until he spoke with an attorney while detained at the NWIPC. *Id.* These circumstances give the Court pause in characterizing the instant petition as an "abuse" of the writ. Instead, it appears to be a result of Petitioner navigating a "[a] statutory and regulatory framework . . . [that] can charitably be described as complex." *Yaman v. Lyons*, 2026 WL 323060, at *3 (E.D. Cal. Feb. 6, 2026), *report and recommendation adopted*, 2026 WL 453565 (E.D. Cal. Feb. 18, 2026) (citing *Prieto-Romero*, 534 F.3d at 1057). Had Petitioner been represented in his prior petition, his counsel likely would have challenged his redetention. *See Haidari v. Scott*, 2026 WL 1194634, at *1 (W.D. Wash. May 1, 2026). Accordingly, the Court agrees with Petitioner that he has demonstrated cause for failing to raise his *Mathews* claim in his earlier petition. Further, given the constitutional nature of Alam's claim, the Court also finds Alam would be prejudiced if the doctrine barred him from raising it here.

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 18

### D.    Remaining Claims and Injunctive Relief

Petitioners also seek permanent injunctive relief prohibiting their redetentions during the pendency of their removal proceedings, absent written notice and a hearing, at which the Government would be required to prove by clear and convincing evidence that Petitioners are a flight risk or danger to the community and that no alternatives to detention would mitigate those risks.  Dkt. 1 at 26.  Petitioners argue they have met the requisite requite factors under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  *Id.* ¶ 95.

The Court recognizes that courts in this District are not uniform in deciding similar requests, *see* Dkt. 13 at 11, and there may come a point when the Court revisits its practice and finds, given the volume of immigration habeas petitions challenging ICE's conduct under *Mathews*, that noncitizens face the threat of irreparable harm based on the aggregated treatment of similarly situated noncitizens rather than the individual habeas petitioner's circumstances.  Petitioners' request, however, is broad.  It seeks to prohibit any redetention, shifts the burden to the Government, and utilizes a standard of proof higher than that typically imposed during discretionary bond hearings.  *See Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).  Such a broad injunction is also in tension with a situation involving, for example, the mandatory detention of someone under the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E).

On the current record, Petitioners have demonstrated they were unlawfully redetained.  However, the Court is not aware of any noncitizen habeas petitioner previously granted release under *Mathews* in this District who was, in turn, subsequently unlawfully redetained again.  Accordingly, the Court denies Petitioners' request for permanent injunctive relief without prejudice.

## IV.   CONCLUSION[7]

For these reasons, the Court GRANTS in part the habeas petition, Dkt. 1, and ORDERS that Petitioners be RELEASED from immigration detention within twenty-four (24) hours on conditions consistent with those in place at the time of their redetentions.[8]  Respondents shall file a notice with the Court within forty-eight (48) hours that Petitioners have been released. Petitioners' remaining request for injunctive relief is DENIED.  Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 24th day of July, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

---

[7] The Court is compelled to address the practice of joining multiple habeas petitions into a single action. The habeas writ's core focus is on the lawfulness of the individual petitioner's detention.  While the Court is unaware of any statute or court rule prohibiting the practice of filing a joint petition such as the instant, habeas petitioners remain subject to the federal rules governing the joinder of plaintiffs.  *See* Fed. R. Civ. P. 20.

The convenience of consolidating facially similar claims into a single petition often comes at the expense of comprehensive advocacy—as evidenced here by the parties' truncated (or entirely omitted) arguments and the piecemeal evidentiary record.

Further, while Petitioners could not have proactively predicted the Government's concession related to Justilien, Rangel Rojas, and Ferrera Orellana's due process claim, Alam's prior habeas petition put counsel on notice that his detention was possibly governed by a statutory scheme different than the others, and that, by filing a successive habeas petition shortly after a denial, was also likely to confront an "abuse of writ" argument from Respondents.  The decision to include Alam's claim in the joint petition effectively delayed relief for the others.

[8] As noted above, Rangel Rojas agreed to voluntarily depart the United States, which was to be completed by July 22, 2026.  Clark Decl., ¶ 5, Ex. D at 3.  It is unknown to the Court whether Rangel Rojas remains detained at the NWIPC.  If he voluntarily departed during the pendency of this petition, his request for release is moot.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 20